FILED
AUG 2 6 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
AUG 2 7 2004

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 04 CR 464-21 |
| | ) | Hon. Ronald A. Guzman |
| ROYAL GARRETT | ) | |

### GOVERNMENT'S SUPPLEMENT FILING IN SUPPORT OF ITS MOTION, PURSUANT TO 18 U.S.C. § 3145 TO REVOKE MAGISTRATE NOLAN'S ORDER RELEASING DEFENDANT ON BOND

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully files these supplemental documents in support of its motion to have this Court, pursuant to 18 U.S.C. § 3145(b), revoke Magistrate Judge Nan R. Nolan's August 18, 2004, order releasing defendant on bond. As set forth below and in its previous filing, defendant Garrett is both a danger to the community and a risk of flight and should be detained. 18 U.S.C. §§ 3142(e) and (f). In addition, as discussed in its prior filing there is no condition or combination of conditions that will assure defendant's appearance in Court and the safety of the community and numerous cooperating witnesses in the case, and defendant has not rebutted the statutory presumption that he should be detained. 18 U.S.C. § 3142(e).

335

I

BACKGROUND

The government more fully set forth the background of this case in its filing on August 18, 2004, and does not intend to repeat that information here. However, pursuant to the Court's directive, the government has filed a copy of the transcript of the detention hearing held before Magistrate Nolan on August 18, 2004. (Transcript Attached as Exhibit A).[1] In addition, the government has also filed a copy of the Chicago Police Report corresponding to defendant Garrett's arrest on a warrant for attempted murder in Cook County State Court and the subsequent recovery of .40 caliber Glock model 22 handgun from the purse of his wife, Catina Garrett. Catina Garrett testified at defendant's initial detention hearing[2] and offered to be a third party surety on his behalf. (Exhibit A, pp. 12-15). The handgun recovered from Ms. Garrett's purse was fully loaded with a 15 round clip and a round in the chamber. That gun was subsequently sent to the Illinois State Police crime lab and the shell casings recovered from defendant's shooting of the cooperating witness (CW-17), exhibits 4, 5, and 6 to the lab report dated November 6, 2001, were matched to the gun found in Catina Garrett's purse. (Police and Lab Reports attached as Exhibit B, p. 7).

---

[1] The government also delivered a copy of the transcript to the Court on May 24, 2004, in advance of this filing.

[2] Defendant's other witnesses included a pastor and a school teacher who testified to defendant's character, and his sister who agreed to post her house to secure bond. (Exhibit A, pp. 5-12).

II.

ARGUMENT

The witnesses defendant presented at his detention hearing do nothing to change the fact that defendant is a danger to the community and to cooperating witnesses in this matter. Moreover, defendant is a flight risk based upon his history of failures to appear and the penalty he is facing in this matter. A defendant's personal characteristics and financial resources are one of four factors the Court must consider in making the detention determination. 18 U.S.C. § 3142(g). Here, accepting the testimony of the witnesses (that they believe he is of good character and the sister's willingness to post her property on his behalf), this testimony does nothing to undercut his dangerousness. Simply put, defendant shot a fellow gang member and that gang member's six year old son while he was riding in a car with his girlfriend and their two children. Defendant, along with his co-conspirators, then undertook a flagrant campaign to obstruct justice by attempting to have their fellow gang member recant his (CW-17's) identification of defendant and his co-conspirator.[3] The vast majority of these efforts were tape recorded by CW-17 at the direction of law enforcement. The conspirators believed that they had achieved their goal – CW-17's recantation of his identification of defendant and his co-defendant Randy Carter as the participants in the shooting of CW-17 and his six year old son. Specifically, once defendant and his co-conspirator's received the recantation letter, they had it notarized and gave it their lawyers to tender it to the Cook County State's Attorney's Office in discovery. A defendant, in a presumption case (based upon the drug conspiracy charge), who shoots a fellow gang member

---

[3] That co-defendant, Randy Carter, was ordered detained by Magistrate Keys following a detention hearing on June 24, 2004, and defendant's motion to reconsider that ruling was also denied by Magistrate Keys on July 30, 2004.

3

and his six year old son in a dispute over control of a drug distribution location and whose co-conspirators then engage in a massive campaign to have the witness recant his testimony, is a danger to the community and a threat to other witnesses regardless of his ability to gather witnesses to testify to his so-called good character. To say otherwise defies logic and the government respectfully requests that this Court revoke Magistrate Nolan's order releasing him on bond and order defendant detained pending trial.

                    Respectfully submitted,

                    PATRICK J. FITZGERALD
                    United States Attorney

By: _____
    Joseph M. Alesia
    Daniel Rubinstein
    Assistant United States Attorneys
    219 S. Dearborn Street, 5th Floor
    Chicago, IL 60604
    (312) 353-5300

4

# See Case File For Exhibits